UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARDSON RFPD, INC., <br><br> Plaintiff, <br><br> v. <br><br> EMHISER RESEARCH, INC. <br><br> Defendant. | **COMPLAINT** <br><br> Civil Action No. _____ |

Plaintiff Richardson RFPD, Inc. ("Richardson"), by its attorneys, alleges the following for its Complaint against Emhiser Research, Inc. ("Emhiser"):

## NATURE OF THE ACTION

1. In 2020, Emhiser issued two purchase orders to Richardson for electronics products. One of the purchase orders (the "NCNR PO") included electronics merchandise to be procured by Richardson on a non-cancelable and non-returnable ("NCNR") basis. In response, Richardson procured the ordered merchandise and held it in inventory for Emhiser. Because Emhiser had exceeded its credit limit and owed outstanding payments to Richardson, Richardson waited to ship some of the merchandise until Emhiser's account was current. Since July 2020, Emhiser has failed to make certain payments owed to Richardson, and as a result Richardson continues to store NCNR merchandise for Emhiser, for which Emhiser failed to pay.

2. In addition, Richardson shipped other merchandise requested in the purchase orders to Emhiser and issued invoices, which Emhiser failed to pay.

3. Richardson now asserts five claims against Emhiser: (1) breach of contract to recover the value of the invoiced merchandise that Richardson supplied to Emhiser; (2) breach of contract for Emhiser's failure to pay for the NCNR merchandise; and, in the alternative:

(3) promissory estoppel to enforce Emhiser's promise to pay for the merchandise that it directed Richardson to obtain for it; (4) account stated, and (5) unjust enrichment for the value of the merchandise Emhiser received but for which it failed to pay.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Richardson RFPD, Inc. is a Delaware corporation with its principal place of business in Geneva, Illinois.

5. Defendant Emhiser Research, Inc. is a Nevada corporation with its principal place of business in Verdi, Nevada.

6. This Court has diversity jurisdiction of the subject matter of this action under 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7. This Court has personal jurisdiction over Emhiser because the Terms and Conditions ("T&Cs") governing the parties' business relationship, attached as **Exhibit 1**, provide that "Any proceeding arising out of or related to this Agreement must be commenced in any court of competent jurisdiction located in New York County in the State of New York. The parties hereby submit to the exclusive jurisdiction of such court and waive (a) any right to a jury trial and (b) defense of lack of personal jurisdiction in such court." (Ex. 1, ¶ 4.)

8. Venue is proper in this District because the T&Cs governing the parties' relationship further provide that "each of the parties irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of venue of any such proceeding in [New York] and any claim that any such proceeding brought in any such courts has been brought in any inconvenient forum." (*Id.* (capitalization altered).)

## GENERAL ALLEGATIONS

**Emhiser Ordered Non-Cancelable and Non-Returnable Merchandise from Richardson**

9. After previously ordering and accepting merchandise from Richardson subject to Richardson's T&Cs, on or about July 14, 2020, Emhiser issued a PO that included at least $212,911.14 for NCNR electronics components to Richardson, which Emhiser intended to incorporate into its own products.

10. By email on or about July 17, 2020, Jolyne Sisco of Emhiser confirmed that Emhiser understood the parts were NCNR, meaning that Emhiser could not cancel the order or return the parts and was obligated to pay for them and accept delivery.

11. Richardson accepted Emhiser's order consistent with the terms set forth in the PO.

12. Thereafter, Richardson obtained and held in inventory the NCNR merchandise Emhiser requested under the PO.

13. Emhiser failed to pay amounts owed on its account, and as such Richardson has not shipped the NCNR merchandise.

14. Further, Richardson demanded payment in advance for the NCNR merchandise so it could be shipped to Emhiser.

15. The T&Cs governing the PO provide that Richardson "reserves the right to . . . require payment in advance." (T&Cs, Ex. 1, ¶ 1.)

16. Emhiser failed to pay for the NCNR merchandise.

17. Richardson continues to store the NCNR merchandise ordered by Emhiser.

18. Richardson is willing and able to ship the NCNR merchandise to Emhiser once Emhiser pays Richardson.

**Emhiser Failed to Pay for Goods Ordered and Received**

19. Emhiser also ordered and received $227,501.97 worth of merchandise from Richardson for which it has not paid.

20. On or about July 14, 2020, Emhiser ordered thousands of part PH9032.

21. On or about March 25, 2021, Richardson shipped 1,599 of part PH9032 at $301.49 each and issued Invoice 1010396 for $482,082.51.

22. Emhiser made partial payments on Invoice 1010396 from June 1, 2021 through September 21, 2022 totaling $451,283.13 (*see* Account Statement, attached hereto as **Exhibit 2**). As such, Emhiser owes $30,799.38 on Invoice 1010396.

23. On or about March 30, 2021, Richardson shipped an additional 541 of part PH9032 at $301.49 each and issued Invoice 1011142 for $163,106.09.

24. On or about September 16, 2020, Emhiser ordered part D1021UK.02 at $115.85 each. On or about March 26, 2021, Richardson shipped 290 and issued Invoice 1010594 for $33,596.50.

25. Emhiser did not make any payments on invoices 1011142 or 1010594. (*See id.*)

26. Under invoices 1011142, 1010396, and 1010594 (the "Invoices," attached hereto as **Exhibit 3**), Emhiser owes Richardson $227,501.97.

27. The Invoices stated that payment for the delivered merchandise was due to Richardson within 60 days of the Invoice date.

28. Like Richardson's prior shipments to Emhiser, the shipments covered by the Invoices were expressly made subject to Richardson's T&Cs.

29. The T&Cs were deemed accepted based on Emhiser's receipt of the invoiced merchandise. (T&Cs, Ex. 1, at 1.)

30. In addition, Emhiser's acceptance of other products manifested its assent to the T&Cs by their terms. (T&Cs, Ex. 1.)

31. The T&Cs further stated that merchandise would be deemed accepted by the customer unless the customer notified Richardson in writing of shortages, damage, or defects with the merchandise within ten days of delivery. (*Id.* ¶ 5.)

32. Emhiser never notified Richardson of any shortages, damage, or defects with the delivered and invoiced merchandise; accordingly, Emhiser accepted the merchandise and the corresponding T&Cs.

33. The T&Cs also stated that past-due invoices would accrue interest at the rate of 1.5% per month (T&Cs, Ex. 1, ¶ 1), and Richardson would be entitled to recover costs and expenses incurred collecting amounts owed by Emhiser, including reasonable attorneys' fees. (*Id.* ¶ 4).

34. Finally, the T&Cs stated that all disputes would be governed by the laws of the State of New York. (*Id.*)

35. As memorialized in the Invoices, Emhiser owed Richardson a total of $227,501.97 for the delivered merchandise, with payment due for the latest invoice by May 29, 2021.

36. Emhiser failed to make payment in full on the Invoices by the Invoices' due dates.

37. Accordingly, Emhiser owes Richardson $227,501.97 in principal for the delivered and invoiced merchandise.

38. Richardson is also entitled to recover contractual interest that has accrued on the unpaid principal since May 2021 as well as attorneys' fees incurred to recover Emhiser's unpaid obligation.

**Emhiser Did Not Dispute the Amounts Owed**

39. In or around October 2022, Richardson sent a letter to Emhiser notifying it that effective October 7, 2022, Emhiser still owed an outstanding balance of $227,501.97 in unpaid invoices and $212,911.14 for the NCNR merchandise and demanding payment in full.

40. Larry Bevilacqua, a Director at Emhiser, emailed in response that

> Emhiser extends its sincere apologies for falling behind on our payment obligations with Richardson and its great team. Obviously, you have surmised that we are under financial stress. There have been several unfortunate circumstances which have accumulatively contributed to our current financial situation, and we want to convey that we are working diligently to remedy our situation. As part of our efforts, Emhiser has made some internal changes to its manufacturing structure and oversight of its financial management. A few people within the organization have transferred into a controlling role and are working on solutions to our financial burden.

41. Bevilacqua did not dispute the amounts owed as stated in the demand letter.

42. Subsequently, Shelley Hernandez, also a Director at Emhiser, emailed a response to Richardson, apologizing for the "frustrations with our account" and stating that Emhiser had experienced financial difficulties. Hernandez further noted that Richardson "had difficulties collecting from us in the past" and that Emhiser was "working hard to get product out the door so that we have some money coming in." Hernandez also apologized for the delayed response, stating, "I didn't quite know what to say."

43. Hernandez did not dispute the amounts owed as stated in the demand letter.

### COUNT ONE – BREACH OF CONTRACT
**(Invoiced and Delivered Merchandise)**

44. The preceding allegations are incorporated as though set forth fully herein.

45. Emhiser requested to purchase merchandise from Richardson at a specified price.

46. Richardson offered the requested merchandise to Emhiser at the specified price, subject to the terms set forth in its Invoices and T&Cs.

47. Emhiser accepted the offered merchandise at the specified price.

48. In each case of offer and acceptance, Richardson and Emhiser formed a binding contract.

49. Richardson delivered the merchandise subject to the terms set forth in its Invoices and T&Cs.

50. Pursuant to Richardson's Invoices and T&Cs, Emhiser agreed to pay the amounts specified in the Invoices, which have now come due.

51. Emhiser has not paid for the delivered and invoiced merchandise, and $227,501.97 in principal remains outstanding, even though that amount is due in full.

52. By its nonpayment, Emhiser has breached its agreement with Richardson to pay for the merchandise that Richardson offered and delivered and that Emhiser accepted.

53. Since May 2021, when Emhiser initially defaulted on its payment obligations to Richardson, Emhiser's unpaid principal has accrued, and continues to accrue, contractual interest in an amount to be proven at trial, all of which is recoverable under the T&Cs.

54. Richardson has also incurred significant legal fees and costs recoverable under the T&Cs.

55. Based on the foregoing, Richardson is entitled to damages for Emhiser's breach of contract in the approximate amount of $227,501.97, plus contractual interest and attorneys' fees and costs.

### COUNT TWO – BREACH OF CONTRACT
**(Merchandise Held in Inventory for Emhiser)**

56. The preceding allegations are incorporated as though set forth fully herein.

57. When Emhiser issued the PO to Richardson for NCNR merchandise, it made an offer to Richardson.

58. In exchange for Richardson obtaining and holding in inventory the merchandise set forth in the PO, Emhiser offered to pay for the merchandise.

59. Richardson accepted that offer when it accepted Emhiser's NCNR PO and acquired the NCNR merchandise that Emhiser ordered.

60. By Emhiser's offer and Richardson's acceptance, Emhiser and Richardson formed a binding contract.

61. Richardson performed its obligations under the contract when it obtained and held in inventory the merchandise Emhiser requested in the PO and when it made that merchandise available for delivery to Emhiser.

62. Richardson has exercised its rights under the T&Cs to "require payment in advance." (T&Cs, Ex. 1, ¶ 1.)

63. Emhiser has refused to pay for the NCNR merchandise.

64. By disregarding Richardson's demands for Emhiser to tender payment, Emhiser has breached its contract with Richardson to pay for the merchandise that Richardson obtained and held in inventory for it.

65. Richardson holds in inventory for Emhiser approximately $212,911.14 of NCNR merchandise that has not been accepted by Emhiser or paid for.

66. Based on the foregoing, Richardson is entitled to damages for Emhiser's breach of contract in the approximate amount of $212,911.14, plus applicable interest and attorneys' fees and costs.

## COUNT THREE – PROMISSORY ESTOPPEL
### (In the Alternative to Claims One and Two, for All Merchandise)

67. The preceding allegations are incorporated as though set forth fully herein.

68. In 2020, Emhiser promised to pay Richardson for merchandise that it directed Richardson to procure for it.

69. Richardson justifiably relied on this promise because Emhiser had previously lived up to similar promises.

70. Relying on this promise and following Emhiser's direction, Richardson obtained merchandise worth more than $400,000.00, but Emhiser has refused to pay for the merchandise, even after the dates in and around 2020 and 2021 by which it had promised to pay for the merchandise have passed.

71. To prevent injustice, Emhiser's promise to pay for merchandise must be enforced based on Richardson's detrimental and justifiable reliance on that promise.

72. As an alternative to Claims One and Two, Richardson seeks to enforce Emhiser's promise to pay for more than $400,000.00 worth of merchandise—a promise on which Richardson reasonably and detrimentally relied based on its past experience with Emhiser.

## COUNT FOUR – ACCOUNT STATED
### (In the Alternative to Claims One, Two, and Three)

73. The preceding allegations are incorporated as though set forth fully herein.

74. Emhiser made partial payments on amounts owed to Richardson.

75. Emhiser owes Richardson $227,501.97 for products Emhiser has received.

76. Emhiser also owes Richardson $212,911.14 for the NCNR merchandise.

77. Richardson stated this account to Emhiser in a letter sent on or about October 2022.

78. Two different directors from Emhiser responded to the demand letter. Both apologized, and neither disputed the amounts owed.

79. As such, Emhiser has assented to Richardson's statement of the account between the parties and thereby agreed that the stated balance was due and owing.

80. To date, Emhiser still has not paid the stated amount of its account with Richardson, even after acknowledging the account's validity and that the account is past due.

81. Accordingly, Richardson seeks to enforce the outstanding stated account of $440,413.11, plus applicable interest, fees, and costs.

## COUNT FIVE – UNJUST ENRICHMENT
### (In the Alternative to Claims One, Three, and Four)

82. The preceding allegations are incorporated as though set forth fully herein, except as to any allegations tending to show an enforceable contract, which are excluded from this claim.

83. In 2021, Richardson supplied Emhiser with merchandise worth $227,501.97.

84. Richardson and Emhiser are businesses, and Richardson did not provide the merchandise as a gift or in a gratuitous manner; rather, Richardson expected payment for the merchandise it provided to Emhiser.

85. For its part, Emhiser did not reject the merchandise Richardson delivered; indeed, it accepted the merchandise and made partial payment to Richardson for the merchandise Richardson delivered.

86. Emhiser received a benefit and was enriched by receiving the merchandise at Richardson's expense.

87. It would be unjust and against equity and good conscience to permit Emhiser to retain this benefit without compensating Richardson.

88. As such, Richardson seeks restitution in the approximate amount of $227,501.97 for the value of the merchandise that Emhiser received and accepted without paying for, plus applicable costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richardson RFPD, Inc. respectfully requests that the Court enter judgment in its favor and against Defendant Emhiser Research, Inc. and grant relief as follows:

a) Contractual damages in an amount to be proven at trial;

b) Alternatively, equitable relief in an amount to be proven at trial;

c) Applicable interest;

d) Attorneys' fees and costs awardable to Richardson under the T&Cs and applicable law; and

e) Such other and further relief as the Court deems just and proper.

Dated: January 23, 2023

Respectfully submitted,

*s/ Paul D. Swanson*
Paul D. Swanson
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
Facsimile: 303.295.8261
pdswanson@hollandhart.com

*Attorneys for Richardson RFPD, Inc.*

Plaintiff's Address:
1950 S Batavia Ave Ste 100
Geneva, IL, 60134-3332